**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SEP 2 4 2009

U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| versus | ) NO. 4:09WI00037HEA |
| TALIBDIN EL-AMIN, | ) 4:09CR00617HEA |
| Defendant. | ) |

## INFORMATION

The United States Attorney charges that:

### COUNT 1

### BRIBERY
### 18 U.S.C. 666(a)(1)(B)

1.    At all times material to this Information, the State of Missouri was a state government that received federal assistance in excess of $10,000 during the one-year period ending June 1, 2009.

2.    Defendant, a Member of the Missouri House of Representatives, was an agent of the State of Missouri, whose duties included representing and assisting the constituents of his 57th Missouri District.

3.    From in or about March, 2009 to on or about June 1, 2009, within the City of St. Louis, in the Eastern District of Missouri, and elsewhere, defendant **TALIBDIN EL-AMIN** did corruptly solicit, demand, accept and agree to accept a thing of value from a person, that is, several cash payments totaling $2,100, intending to be influenced and rewarded in connection with his position and duties as a Member of the Missouri House of Representatives relative to the operations of a small business in the City of St. Louis, valued in excess of $5,000.

4.    Defendant **TALIBDIN EL-AMIN** was, at all times relevant to this Information, the duly elected Member of the Missouri House of Representatives of the 57th Missouri District in the City of St. Louis.  Defendant **TALIBDIN EL-AMIN** was first elected during 2006, and was re-elected during 2008.

5.    John Doe was, at all times relevant to this Information, the owner/operator of a gasoline station and convenience mart located within the 57th Missouri District.

6.    Prior to March, 2009, John Doe's relationship with his City of St. Louis Alderman soured as a result of John Doe refusing to contribute to his Alderman's annual fund-raiser and as a result of another incident.  John Doe's business began receiving increased inspections from different St. Louis City agencies, Missouri State agencies, and began receiving a substantial number of nuisance citations and city court summons from the City of St. Louis. John Doe believed these increased inspections, nuisance citations, and city court summons were made at the behest of his Alderman as the direct result of his failure to contribute to his Alderman's fund-raisers and because of another incident.  John Doe was seriously concerned that the increased inspections, nuisance citations, and city court summons would adversely impact his business franchises and cause him to lose his business.

7.    During in or about March, 2009, John Doe met with defendant **TALIBDIN EL-AMIN** at defendant's office on Union Boulevard in North St. Louis and sought defendant's assistance as the Missouri 57th District Representative in getting his Alderman and the City of St. Louis to stop the increased inspections and nuisance citations.  John Doe explained and discussed with defendant **TALIBDIN EL-AMIN** his concerns that the increased inspections and nuisance citations would interfere with his ability to maintain his business franchises and continue to operate his business.  Defendant **TALIBDIN EL-AMIN** agreed to

assist John Doe and to use and exert his influence as the 57th Missouri District Representative with the appropriate City of St. Louis officials in exchange for cash payments in the amount of $1,000. John Doe initially refused to pay defendant and no agreement was entered into between the two.

8.    John Doe's concerns for his business continued due to the increased inspections, nuisance citations and city court summons from the City of St. Louis. On April 24, 2009, John Doe had a telephone discussion with defendant **TALIBDIN EL-AMIN** and the two discussed John Doe's business problems.

> **Doe**: I got another summons. [My Alderman], Alderman XXX is just trying to destroy me. I need your help. It's destroying me, it's destroying my family, and I need your help.
>
> **El-Amin**: You continue to funnel money to your attorney, and that's what they do, they get paid for problems to keep going on, o.k., and that's where you're putting your money at, so I've always said I'd be willing to help, you know, however I could.
>
> **El-Amin**: You have to use what's at your disposal, in terms of friendships, to help navigate some of this stuff. I'm not saying you take your money from your attorney, but I'm saying don't waste it if you can solve your problems without it.
>
> **El-Amin**: I'd be glad to sit down and meet with you to see how we can be of help and I can give you some direction on what you can do.

John Doe and defendant **TALIBDIN EL-AMIN** scheduled a meeting for May 1, 2009 to discuss the possibility of defendant lending assistance to John Doe relative to the City of St. Louis matters.

9.    On May 1, 2009, John Doe met with defendant **TALIBDIN EL-AMIN** at defendant's Union Boulevard office in the City of St. Louis. John Doe further discussed with defendant his belief that his Alderman was trying to shut down his business by having the

property declared a nuisance.  Defendant **TALIBDEN EL-AMIN** and John Doe discussed John

Doe making cash payments to defendant in exchange for defendant's assistance as 57th District

Representative.

> **El-Amin**:  What I do, I do it because I'm in a position to do it.

Out of apparent concern that his offices were "bugged", and the conversation was being

recorded, defendant **TALIBDIN EL-AMIN** wrote several notes to John Doe during their

discussion.

> **El-Amin Note**:  How much can you come up with today in good
> faith for efforts?
>
> **El-Amin**:  I don't want to have anything to do with your attorneys,
> what I'm doing is as a community person and an elected official.
>
> **Doe**:  How much money do we need, I can give you $500.
>
> **El-Amin**:  I'm in a position to help out.
>
> **Doe**:  How much money do you want, I have $700?
>
> **El-Amin**:  Not something I'm very comfortable talking about,
> money.  For me to say that I'll do this for that would be a
> violation, so I don't ever want to talk about helping and attaching
> that to money.
>
> **El-Amin Note**: I absolutely don't talk $ in this office.
>
> **Doe**:  $500 o.k.?

Defendant **TALIBDIN EL-AMIN** then accepted $500 in cash from John Doe.

> **El-Amin**: I'll talk to [city officials] and let them know of my
> intention to support you against anything that's perceived to be, as
> people just putting pressure on you, political pressure, for
> whatever reason.
>
> **El-Amin**: I think what you need, you need some room, you need
> these clouds off your head, and I would help take those clouds off
> you.

**El-Amin**: They know me, they know I'm sincere, they know that I work hard, they know that I go out and I protect people, and if they think that I'm involved, if they know that I'm involved, then I think it's going to send a message....

**Doe**: How much...how do you want it?

**El-Amin Note**: 850    May 15
850    June 15
800    July 15

**El-Amin Note**: This puts me at war with the [Alderman's family]. I don't mind. But I need money to fight them.

**Doe**: Can you come down lower on this money?  500?

**El-Amin Note**: 500    5/10
750    6/10
750    7/10

**Doe**: This will be fine.  (Responding to El-Amin's gestured question as to the acceptability of the revised payment schedule)

**El-Amin Note**: Understand, I'm being cautious because of my position.

John Doe and defendant **TALIBDIN EL-AMIN** discussed what defendant planned to do, and defendant told John Doe that he would be in contact with St. Louis City officials on behalf of John Doe.  As defendant **TALIBDIN EL-AMIN** left the meeting room, he took all of his handwritten notes with him.

**El-Amin**: You know, one thing with people in the public, and maybe you all do it, we're very careful to not talk finances and things like that.

**El-Amin**: I don't want to put you in a situation, and that's one reason I just never, I never talk about money, or anything, and I know that you're in a position, that you're just looking for assistance, and you're willing to do what you need to do.

10.    On May 7, 2009, John Doe and defendant **TALIBDIN EL-AMIN** had a

telephone conversation where they agreed to meet at defendant's Union Boulevard office the

next day, May 8, 2009, in order for John Doe to make another payment to defendant.

> **Doe**: How about we get together, I've got something for you
> tomorrow.

> **El-Amin**: O.K., I'll be in tomorrow, so I can call you when I get
> in.

11.    On May 8, 2009, John Doe met with defendant **TALIBDIN EL-AMIN** at

defendant's Union Boulevard office.  At the beginning of the meeting, defendant **TALIBDIN**

**EL-AMIN** accepted $500 cash from John Doe in his office.

> **Doe**: If you want [my Alderman] to be taken care of, we can do
> that...but I don't want to go.

> **El-Amin**: We can do that, that's something separate that, because
> then what happens is, I'll take the burden off of you, and put the
> burden on myself because now I'm interacting with them with this.

> **Doe**: I'll tell you what, as good faith, I can give you a little bit
> more now today, if you can get me set up.

> **El-Amin**: (nods head yes)

> **El-Amin**: I can say, I don't ever want to talk money, but I am
> gonna' make sure I do everything I do to make this work.  I don't
> like to lose, I don't like to lose.

Defendant **TALIBDIN EL-AMIN** then accepted an additional $100 cash.

> **Doe**: One hundred more dollars.

> **El-Amin**: But you don't talk money with him, if you're going to
> do anything with an elected official, do it in terms of a
> contribution, and I can help with that.

12.    On May 15, 2009, John Doe met with defendant **TALIBDIN EL-AMIN** at

defendant's Union Boulevard office.  Defendant told John Doe that he had purportedly spoken

with St. Louis City officials, including a city department head, on his behalf, and that he was

setting up meetings with them to discuss John Doe's situation. Defendant **TALIBDIN EL-AMIN** accepted $500 cash from John Doe in his office.

> **El-Amin**: I'll try and have this resolved by the 26th...that's what I'm shooting for, so that gives me a week to have these meetings.
>
> **El-Amin**: I'm actually going to have a meeting with you and [city department head].
>
> **El-Amin**: Basically, what I want to do is let them know, listen, I'm watching this....

13.     On May 21, 2009, John Doe met with defendant **TALIBDIN EL-AMIN** at defendant's Union Boulevard office. The two discussed defendant's efforts on John Doe's behalf, and specifically discussed defendant's purported discussions with the city department head:

> **El-Amin**: Now, what I'd like to do is be able to say, for Father's Day, here's a Grand.
>
> **El-Amin**: I want to be able to close this myself. I don't want you to be involved, it's all on me, so if it ever comes back, he can't say you gave me this for that.

Defendant **TALIBDIN EL-AMIN** accepted $500 cash from John Doe in his office.

> **Doe**: I owe you five-hundred more, that's it?
>
> **El-Amin**: Uh huh. I'm going to try and get away without doing anything for [city department head], but if he really comes through, I want to give him something.

Defendant told John Doe that he was setting up a meeting for the two of them and [the city department head] for Tuesday, May 26, 2009.

14.     On May 25, 2009, John Doe had a telephone conversation with defendant **TALIBDIN EL-AMIN**, during which defendant assured John Doe that the meeting with [the city department head] was set up for the next day, Tuesday, May 26, 2009.

**Doe**: I'm bringing 2 envelopes, I'll be bringing 2 envelopes, O.K.?

**El-Amin**: Yes.

**Doe**: Alright, O.K., it will all be resolved tomorrow right, hopefully.

**El-Amin**: Yes.

15.    On May 26, 2009, John Doe met with defendant **TALIBDIN EL-AMIN** at defendant's Union Boulevard office. The two discussed defendant's purported discussions with [the city department head].

> **Doe**: What's going on?
>
> **El-Amin**: [city department head] called me back. I was pretty pleased with that, you know, that he's taking this seriously.
>
> **Doe**: How about we meet today with him.
>
> **El-Amin**: No. I'm gonna' tell you this, this is what I think, because if he's saying he wants to look into it, he's going to do this and do that. I want him to do that without necessarily having to, like I said on the phone, put everything before him. Reality is, me being engaged, they're going to slow up. They know that I'm involved and I'm going to be watching it.
>
> **Doe**: So, are we going, do we need to take care of him too?
>
> **El-Amin**: That's my hope, yeah, that's why, at the end of the day, if I can avoid a meeting, I want to. I just want to get it done and if you guys don't have to meet that's fine because he can always say he didn't meet, it protects him.
>
> **El-Amin**: I want to be able to help his thinking process, if you know what I'm saying.
>
> **Doe**: Once this is all done, I have to make a last payment to you, and do I need to come up with his part of the package too?
>
> **El-Amin**: That stuff is really kind of very sensitive. I don't talk money, [city department head] doesn't talk money. He's a public official, just like I'm a public official.

Defendant **TALIBDIN EL-AMIN** then wrote a note and passed it across his desk to John Doe

indicating that he was still owed $500 and John Doe would need an additional $1,000 for

[the city department head].  Defendant **TALIBDIN EL-AMIN** assured John Doe that defendant

would take care of his business issues.

> **El-Amin**: You're invested in me in terms of personally, so I'm
> there.

Following this meeting, John Doe had no further contact with defendant **TALIBDIN EL-**

**AMIN**.

In violation of Title 18, United States Code, Sections 666(a)(1)(B).

MICHAEL W. REAP
Acting United States Attorney

HAL GOLDSMITH, #62501
Assistant United States Attorney

UNITED STATES OF AMERICA            )
EASTERN DIVISION                    )
EASTERN DISTRICT OF MISSOURI        )

     I, Hal Goldsmith, Assistant United States Attorney for the Eastern District of Missouri,

being duly sworn, do say that the foregoing information is true as I verily believe.

_____
HAL GOLDSMITH - 62501

Subscribed and sworn to before me this 18th day of September 2009.

_____
CLERK, U.S. DISTRICT COURT

By: _____
    DEPUTY CLERK